```
UNITED STATES DISTRICT COURT                            USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                           DOCUMENT
------------------------------------------------------X ELECTRONICALLY FILED
                                                      : DOC #: _____
LIUDMILA RAYTMAN, *individually, and on*              : DATE FILED: October 19, 2018
*behalf of all other similarly situated*              :
*consumers,*                                          :
                                                      :
                                      Plaintiff,      :    17 Civ. 9681 (KPF)
                                                      :
                       v.                             :    **OPINION AND ORDER**
                                                      :
JEFFREY G. LERMAN, P.C.,                              :
                                                      :
                                      Defendant.      :
                                                      :
------------------------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

In October 2016, Defendant Jeffrey G. Lerman, P.C. sent Plaintiff Liudmila Raytman a debt collection letter. That letter, according to Plaintiff, attempted to collect a debt that was not owed by Plaintiff, in violation of New York State Medicaid regulations. Plaintiff responded by bringing claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"), for false or misleading representations and unfair practices, and under New York General Business Law ("GBL") § 349 for deceptive practices, all related to the attempted debt collection. Defendant has moved to dismiss Plaintiff's amended complaint. For the reasons set forth in the remainder of this Opinion, Defendant's motion is granted in part and denied in part.

# BACKGROUND[1]

## A. Factual Background[2]

On October 27, 2016, Defendant sent Plaintiff a debt collection letter, also known as a dunning letter (the "October Letter"), seeking to collect on an alleged debt. (Am. Compl. ¶ 9). The debt in question related to medical treatment Plaintiff had received while a Medicaid recipient. (*Id.* at ¶¶ 7, 11-13). The October Letter informed Plaintiff of her right to dispute the validity of the debt within 30 days: If Plaintiff chose to do so, the October Letter stated, Defendant would "obtain a verification of the debt or a copy of a judgment against [Plaintiff], if any, and [mail Plaintiff] a copy of such verification or judgment." (*Id.*, Ex. A). Otherwise, after 30 days, the debt would be assumed to be valid. (*Id.*).

It is alleged that the content — and, indeed, the sending — of the October Letter violated New York law. Specifically, according to the New York State Department of Health's Medicaid rules, a Medicaid beneficiary "*must not be referred to a collection agency* for collection of unpaid medical bills or otherwise billed, *except for applicable Medicaid co-payments*." (Am. Compl.

---

[1] For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #22); Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #25); Defendant's reply memorandum of law as "Def. Reply" (Dkt. #26); Plaintiff's notice of recent Second Circuit authority as "Pl. Supp." (Dkt. #27); and Defendant's response to Plaintiff's notice as "Def. Supp." (Dkt. #31).

[2] The facts set forth herein are taken from the Amended Complaint ("Am. Compl." (Dkt. #7)), filed on January 3, 2018, and the documents attached thereto. As discussed in the text, the Court may consider the October 27, 2016 collection letter, attached as Exhibit A to the Amended Complaint.

¶ 12 (internal quotations omitted)). Because the debt referenced in the October Letter was "not an applicable co-payment but rather an attempt to collect the actual debt," Plaintiff alleges not only that she is not required to pay the debt, but that Defendant is not allowed to attempt its collection. (*Id.* at ¶¶ 13-14).

**B.     Procedural Background**

Plaintiff initiated this action by filing a class action complaint in New York State Supreme Court, New York County, on or about October 16, 2017. (Dkt. #1). On December 8, 2017, Defendant removed the case to federal court on the basis of federal question jurisdiction. (*Id.*). On January 3, 2018, Plaintiff filed an amended class action complaint alleging that Defendant had violated the FDCPA and the GBL. (Dkt. #7).

On January 17, 2018, Defendant submitted a letter to the Court indicating its intention to move for dismissal of the case. (Dkt. #9). The Court held a conference on March 2, 2018, during which it set a briefing schedule for Defendant's anticipated motion. (Dkt. #15). In accordance with that schedule, Defendant filed a motion to dismiss along with supporting papers on April 13, 2018. (Dkt. #19-22). Plaintiff opposed the motion on May 22, 2018 (Dkt. #25), and Defendant replied to Plaintiff's opposition submission on June 6, 2018 (Dkt. #26). Thereafter, Plaintiff submitted a Notice of Recent Second Circuit Authority on July 30, 2018 (Dkt. #27), to which Defendant responded on August 14, 2018 (Dkt. #31). Accordingly, the motion is fully briefed and ripe for decision.

**DISCUSSION**

**A.   Applicable Law**

   **1.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

## 2. The Fair Debt Collection Practices Act

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. "To establish a violation of the FDCPA, a plaintiff must prove three elements: (i) the plaintiff must be a consumer; (ii) the defendant must be a debt collector; and (iii) the defendant must have committed some act or omission in violation of the FDCPA." *Guzman* v. *Mel S. Harris & Assocs., LLC*, No. 16 Civ. 3499 (GBD), 2018 WL 1665252, at *3 (S.D.N.Y. Mar. 22, 2018) (quoting *Vasquez* v. *Mullooly, Jeffrey, Rooney & Flynn*

5

*LLP*, No. 16 Civ. 6609 (VSB), 2017 WL 4402567, at *3 (S.D.N.Y. Sept. 30, 2017).

Plaintiff alleges that Defendant, by sending the October Letter, violated Sections 1692e(10) and 1692f of the FDCPA. Section 1692e states that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section includes a non-exhaustive list of practices that fall within this definition, including the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

Section 1692f provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. One example of such conduct includes "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

Sections 1629e and 1629f are not mutually exclusive. *See Arias* v. *Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135-36 (2d Cir. 2017). Because each section targets a different type of misconduct, the same conduct by a debt collector can violate both sections simultaneously. *See id.*

3. **New York General Business Law § 349**

GBL § 349, New York's consumer protection law, prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To establish a *prima facie* case, a plaintiff "must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Crawford* v. *Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman* v. *Chemical Bank*, 95 N.Y.2d 24, 29 (2000)).

## B. Plaintiff's Allegations State a Claim Under the FDCPA

For purposes of the instant motion, Defendant concedes that the first two elements of a valid FDCPA claim — that Plaintiff is a consumer and Defendant is a debt collector — are met. Defendant argues, however, that Plaintiff has not sufficiently alleged an act or omission that violates the FDCPA.

### 1. The Right to Dispute Clause in the October Letter Does Not Foreclose a Claim Under the FDCPA

As a threshold matter, Defendant argues that because the October Letter provided adequate notice of how to dispute the debt under the FDCPA, there can be no violation of the statute. (Def. Br. 5). Section 1692g requires that a debt collector provide a consumer with written notice of the consumer's right to challenge the validity of the debt. 15 U.S.C. § 1692g. The consumer may notify the debt collector within 30 days of receipt of the notice that she disputes the validity of the debt, and "the debt collector will [then] obtain verification of the debt or a copy of judgment against the consumer." *Id.*

Because the October Letter included the debt dispute notice mandated by § 1692g, Defendant argues that Plaintiff's "subsequent allegation that the

7

underlying debt is invalid, standing alone, cannot form the basis of an FDCPA claim." (Def. Br. 5). In other words, the October Letter, although seeking collection on a debt that Plaintiff did not owe, was not and could not be misleading or unfair because Defendant was not required by the FDCPA to confirm the validity of the debt prior to sending the letter. (*Id.*). Instead, Defendant was only required to notify Plaintiff of her right to dispute the validity of the debt. (*Id.*). Because Defendant did so, "in full accordance with the requirements of the FDCPA," the letter "cannot constitute a false or misleading action in violation of the statute." (Def. Br. 5-6 (quoting *Bleich* v. *Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002))).

In making this argument, Defendant relies heavily on two decisions from the Eastern District of New York: *Bleich* v. *Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002), and *Vangorden* v. *Second Round, Ltd. P'ship*, No. 16 Civ. 6227 (SJF) (AKT), 2017 WL 4350438 (E.D.N.Y. June 20, 2017) ("*Vangorden I*"), *vacated and remanded*, 897 F.3d 433 (2d Cir. 2018) ("*Vangorden II*"). As Plaintiff notes, on July 27, 2018, after the parties submitted their briefings in support of this matter, "the Second Circuit reversed the lower court's decision in *Vangorden* and expressly found the holding of *Bleich* wrong." (Pl. Supp. 1).

Plaintiff is correct: *Vangorden* speaks directly to the issues in dispute here, and the Second Circuit's decision unequivocally rejects Defendant's line of reasoning. More precisely, the *Vangorden* Court held that a defendant's "compliance with § 1692g in allegedly misstating a Debt obligation" to a

8

plaintiff does not preclude her "as a matter of law from stating plausible FDCPA claims under § 1692e and § 1692f." *Vangorden II*, 897 F.3d at 442. In consequence, Defendant's argument that attempting to collect an invalid debt was only a "technical falsity," cured by notifying Plaintiff of the proper channels for validation, carries no weight. *Id.* at 439.

Plaintiff's reading of the FDCPA is supported, not only by the text of the statute, *see Vangorden II*, 897 F.3d at 440, but also by Congressional intent, *see Avila* v. *Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016). The FDCPA is "primarily a consumer protection statute." *Jacobson* v. *Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008). Ultimately, courts must construe the statute liberally to effect the statutory purpose of "eliminat[ing] abusive debt collection practices by debt collectors, ... insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and ... promot[ing] consistent State action to protect consumers against debt collection abuses." *See Avila*, 817 F.3d at 75 (internal quotations omitted). Allowing debt collectors to immunize themselves from liability through compliance with § 1692g subverts the underlying purpose and intent of the FDCPA.

In light of *Vangorden II*, Defendant does not dispute that providing proper notification under § 1692g does not immunize it from liability. (Def. Supp. 1-2). Instead, Defendant attacks Plaintiff's substantive claims, arguing that she has not plausibly pleaded violations of §§ 1692e or 1692f. (*Id.*).

9

### 2. Plaintiff Has Adequately Alleged That the October Letter Was Misleading Under § 1692e

As Defendant notes, while holding that compliance with § 1692g was not a complete bar to liability, the *Vangorden* Court "stopped well short of holding that an initial communication regarding an 'invalid' debt is a *per se* violation of [the FDCPA.]" (Def. Supp. 1). Instead, to determine whether the letter violated § 1692e, courts must ask whether a collection letter is false, deceptive, or misleading "from the perspective of the objective least sophisticated consumer." *Easterling* v. *Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012). This standard queries "how the least sophisticated consumer — 'one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer' — would understand the collection notice." *Avila*, 817 F.3d at 75 (quoting *Russell* v. *Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). To such a consumer, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon* v. *Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)

Applying this test, the *Vangorden* Court held that the collection notice was misleading under § 1692e. *See Vangorden II*, 897 F.3d at 442-43. The letter at issue there sought the payment of a debt that had been settled five years earlier by the plaintiff. *See id.* at 437-38. Recognizing that a collection letter may be misleading if there is even one reasonable interpretation that is inaccurate, the Second Circuit noted that in that case, "the June Letter's *only* interpretation was misleading," because "it told [Plaintiff] that she had an

outstanding debt obligation" when in fact, she did not. *See id.* at 442 (emphasis added).

Defendant attempts to distinguish this case from *Vangorden* in two respects. *First*, it observes that the plaintiff in *Vangorden* had previously paid and satisfied the debt. (Def. Supp. 2). Here, the debt still exists in some form — Plaintiff is simply not required to pay it, per New York's Medicaid rules. Because the existence of the debt itself was not inaccurate, Defendant argues, the debt was not misrepresented.

This Court does not find that distinction to be persuasive. In its analysis, the *Vangorden* Court relies on cases where the *extent*, as opposed to the existence, of the debt was misrepresented in violation of § 1692e. *See Vangorden II*, 897 F.3d at 438. For example, the fact that a debt obligation may be less than the amount stated in the collection letter can lead to a plausible FDCPA misrepresentation claim. *See McLaughlin* v. *Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014). The *Vangorden* Court explicitly stated that "even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA." *Vangorden II*, 897 F.3d at 442. To be sure, collection letters that misstate the very existence of a debt may be less likely to pass the least sophisticated consumer test than those that do not. Significantly, however, the Second Circuit did not cabin its holding in *Vangorden* to the former class of cases. *Id.*

In fact, Plaintiff's § 1692e "misunderstanding" claim is arguably stronger under the "least sophisticated consumer" standard than that presented in

*Vangorden II*. In the earlier case, the Second Circuit held that a collection letter attempting to collect a debt was deceptive even when the plaintiff knew that she had previously paid the debt. Here, not only did Plaintiff not have personal knowledge of the validity of the debt, but she would have had to be "familiar with thousands of pages of Medicaid regulation which include the fact that [she was] not obligated to pay certain medical bills," in order for her not to have been misled by the notice. (Def. Reply 13). This Court cannot find that the average consumer, much less the least sophisticated consumer, would have a working knowledge of those regulations.

*Second*, Defendant observes that in the October Letter, Defendant did not threaten adverse action. (Def. Supp. 2). In *Vangorden*, by contrast, the defendant indicated in the collection letter that it might report information regarding the plaintiff's account to credit bureaus, adversely affecting the plaintiff's credit score. *See Vangorden II*, 897 F.3d at 442-43. Defendant intuits that the *Vangorden II* finding of "misrepresentation" in violation of § 1692g was dependent on the inclusion of this threat. (Def. Supp. 2). After all, the Second Circuit specifically observed that a customer who was aware of her debt obligation might nonetheless "pay the debt out of fear that there was already an adverse effect on her credit that would continue as long as the obligation remained outstanding." *See Vangorden II*, 897 F.3d at 443.

Contrary to Defendant's arguments, *Vangorden II* does not suggest that the finding of misrepresentation was predicated, in whole or in part, on the collection letter's threatening language. Rather, the Second Circuit found that

the letter was misleading because it misstated the plaintiff's debt obligation. *See Vangorden II*, 897 F.3d at 442. In discussing the defendant's additional threat of contacting credit bureaus, the Second Circuit was merely responding to the argument that the plaintiff already knew that she had paid the debt, and therefore that the attempted collection of the debt could not be misleading. *See id.* at 442-43. Defendant's argument did not persuade the Second Circuit, and is factually inapposite in any event.

After *Vangorden II*, this Court cannot expect that the "least sophisticated consumer" would have a working knowledge of New York's Medicaid payment rules, and thus that such a consumer would have been misled by the October Letter. Plaintiff has thus plausibly alleged that the letter was misleading, in violation of § 1692e.

### 3. Plaintiff Has Adequately Alleged That the October Letter Was Unfair Under § 1692f

Plaintiff's well-pleaded allegations that the October Letter was misleading likewise indicate that Defendant's collection practice was "unfair" under § 1692f. To review, § 1692f forbids any "unfair or unconscionable means to collect or attempt to collect any debt," and gives examples of such prohibited means. 15 U.S.C. § 1692f. One listed example is "the collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* Collection of an invalid debt is inherently an unfair practice under § 1692f. *See Arias*, 875 F.3d at 135. No further allegations of "unfair and unconscionable conduct" are needed. *See Vangorden II*, 897 F.3d at 438.

Plaintiff alleges that Defendant attempted to collect a debt that was not authorized under the New York Medicaid Rules. In fact, "state law expressly prohibits the collection of medical bills other than applicable co-payments from New York Medicaid recipients." (Pl. Opp. 17). As discussed above, Plaintiff has plausibly pleaded that Defendant attempted to collect an invalid debt, in violation of Medicaid regulations. Therefore, Plaintiff has stated a plausible claim under § 1692 and does not need to plead further allegations of unfairness or unconscionability.

4. **The New York Medicaid Rules Provide an Independent Basis for FDCPA Liability**

As somewhat of an afterthought, Defendant argues that Plaintiff's "claims under the FDCPA fail because, at bottom, she is trying to convert [a] putative violation of state law into violations of the FDCPA without any independent basis under federal statute." (Def. Br. 11). In so arguing, however, Defendant ignores Second Circuit case law demonstrating that the "legal status imposed on debts and service charges by state law clearly create[s] FDCPA violations." (Pl. Opp. 21). *See, e.g., Tuttle* v. *Equifax Check*, 190 F.3d 9, 11 (2d Cir. 1999) (relying on two Connecticut statutes to determine whether a service charge in a dunning letter was legally unenforceable, and therefore a violation of the FDCPA). Plaintiff invokes the New York Medicaid regulations solely to prove the status of the debt, i.e., legally unenforceable. As discussed, the collection of a debt that is not legally enforceable is in violation of the FDCPA, and Plaintiff is therefore entitled to pursue her claim.

14

## C. Plaintiff's Allegations Do Not State a Claim Under GBL § 349

Separately, Plaintiff brings a deceptive business practices claim under GBL § 349. Specifically, Plaintiff alleges that Defendant's October Letter was materially misleading, and that she was injured as a result of the attempted collection. (Pl. Opp. 22-24). The third element of a GBL § 349 claim, that the act was consumer-oriented, is not in dispute. *See Shapiro* v. *Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000).

Materially misleading acts under § 349 are defined "objectively[,] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Spagnola* v. *Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (quoting *Boule* v. *Hutton*, 328 F.3d 84, 94 (2d Cir.2003)) (internal quotation marks omitted). In the instant action, a reasonable consumer would have been misled by the October Letter. Such a consumer cannot be expected to have a working knowledge, much less an in-depth understanding, of New York Medicaid regulations. Upon receiving the October Letter stating that Defendant was "attempting to collect a debt," a reasonable consumer would have believed that she owed the debt, when, in point of fact, Defendant's collection effort was actually prohibited. (Am. Compl., Ex. A).

Although Plaintiff sufficiently pleads a materially deceptive or misleading practice, she fails to plead injury. To state a claim under § 349, a plaintiff must plead facts alleging actual injury, although not necessarily pecuniary harm. *See Bildstein* v. *MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004). Furthermore, the injury can never be the deception itself. *See*

15

*id.* (finding that plaintiff's allegation that his injury was the fact that he paid a deceptive credit card fee, was inadequate to survive a motion to dismiss). Plaintiff "cannot recover merely for having been deceived." *See In re Amla Litig.*, 320 F. Supp. 3d 578, 595 (S.D.N.Y. 2018).

Here, Plaintiff's legal conclusion of injury is untethered to any factual allegations. (*See* Am. Compl. ¶ 40 ("Plaintiff has been injured by Defendant's illegal conduct.")). Nor does Plaintiff plead any injury that is separate and distinct from the deceptive act. Although the Court has drawn all inferences in Plaintiff's favor, because Plaintiff has failed to plead "something more than pure deception," *Yee Ting Lau* v. *Pret A Manger Ltd.*, No. 17 Civ. 5775 (LAK), 2018 WL 4682014, at *4 (S.D.N.Y. Sept. 28, 2018), or to support her allegations with non-conclusory statements, she falls short of pleading plausibility. For that reason, Defendant's motion to dismiss is granted with respect to Plaintiff's GBL § 349 claim.

## CONCLUSION

For the reasons above, Defendant's motion to dismiss is GRANTED in part with respect to Plaintiff's GBL § 349 claim and DENIED in part with respect to Plaintiff's FDCPA claims. The Clerk of Court is directed to terminate the motion at Docket Entry 19. Per the Court's individual rules, the parties are ORDERED to submit a case management plan on or before **November 8, 2018**.

SO ORDERED.

Dated: October 19, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge